UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

        Plaintiff,

                                        **MEMORANDUM & ORDER**
   v.                                    02-CR-471 (NGG)

AVINAOM DAMTI and OFER YOSEF,           **NOT FOR PUBLICATION**

        Defendants.
------------------------------------------------------------X
GARAUFIS, United States District Judge.

Defendants Avinoam Damti's and Ofer Yosef's request resentencing in light of the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005). On April 27, 2005, the Second Circuit remanded this case, pursuant to United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), for a determination by this court as to whether the Defendants should be resentenced based on federal criminal sentencing modifications imposed by Booker.[1] For the reasons set forth below, this court finds that resentencing is not warranted in this case.

**I.    Original Sentence**

Defendants Damti and Yosef were charged with crimes arising from alleged fraud and

---

[1] It should be noted that the plain error analysis set forth in Crosby applies here because Defendants did not object to the compulsory application of the Guidelines pre-sentence (as neither the Blakely v. Washington, 542 U.S. 296 (2004), nor the Booker decision had yet come down at that time), and therefore this is considered an unpreserved error. See Crosby, 397 F.3d at 119 (holding that Booker must apply on appeal in a case pending on direct review where the initial sentencing occurred before Blakely or Booker were decided); cf. United States v. Fagans, 406 F.3d 138 (2d Cir. 2005) (holding that because the defendant "objected, prior to sentencing, to the compulsory application of the Guidelines, he has preserved the error and the procedure for applying plain-error analysis that we set forth in *Crosby* is inapplicable.").

1

extortion schemes concerning several moving businesses the two operated. After a six week jury trial, both defendants were convicted on May 9, 2003 of one count of conspiracy to commit wire fraud (18 U.S.C. § 371) and four counts of wire fraud (18 U.S.C. § 1343). Damti was additionally convicted of one count of receiving extortion proceeds (18 U.S.C. § 880). Yosef was convicted separately of two counts of extortion via interstate communication (18 U.S.C. § 875(d)) and two counts of making false statements in an application submitted to the United States government (18 U.S.C. § 1001). On October 15, 2003, both were sentenced to 151 month prison terms and three years supervised release. Damti was ordered to pay a fine of $1,000,000 and restitution in the amount of $437,753.00. Yosef was ordered to pay the $437,753 restitution jointly and severally with Damti, as well as a fine of $10,000.

## II.     Booker and Crosby

On January 12, 2005, the United States Supreme Court decided United States v. Booker/Fanfan and, with the decision, implemented significant changes to the process of criminal sentencing in the federal courts. 125 S.Ct. 738 (2005). The Booker decision was written in two parts: the substantive decision, authored by Justice Stevens, discussing the manner in which the Sentencing Guidelines violated the Constitution; and the remedy opinion, authored by Justice Breyer, concluding that certain provisions of the Sentencing Reform Act of 1984 ("SRA") must be invalidated to cure the constitutional violation.

In the substantive opinion, the court held that in order to comply with the dictates of the Sixth Amendment, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."

2

Booker, 125 S.Ct. at 756 (substantive opinion). The opinion emphasized that it was the way in which the Sentencing Guidelines were mandatorily applied pre-Booker that violated a criminal defendant's right to a jury trial as guaranteed by the Sixth Amendment. See Booker, 125 S.Ct. at 750. In the remedy opinion of Booker, a separate majority of the Court held that in order to implement the substantive decision, "[s]everance and excision [were] necessary" with respect to two provisions of the SRA. Id. at 764 (remedy opinion). The two invalidated provisions, Subsection 3553(b)(1) and Section 3742(e), had mandated use of the Guidelines in sentencing and dealt with the standard of review of sentences on appeal, respectively. Id. As Booker invalidated both of these provisions, post-Booker, the Sentencing Guidelines are no longer binding on district court judges.[2]

The Second Circuit's first opportunity to interpret Booker came in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). In Crosby, the court noted that "a critically important aspect of *Booker/Fanfan* is the preservation of the entirety of the SRA with the exception of only the two severed provisions." Crosby, 397 F.3d at 110. The Booker court clearly stated that "[t]he remainder of the [SRA] functions independently" and specifically that "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing." Booker, 125 S.Ct. at 764, 766 (remedy opinion) (quotations and citations omitted). The Second Circuit explained:

> Prior to *Booker/Fanfan*, the section 3553(a) requirement that the sentencing judge "consider" all of the factors enumerated in that section had uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guidelines range unless the statutory standard for a

---

[2] With respect to the standard of review on appeal, Booker imposed "a practical standard of review already familiar to appellate courts: review for 'unreasonable[ness].'" Booker, 125 S.Ct. at 765 (remedy opinion) (quoting 18 U.S.C. § 3742(e)(3) (1994 ed.)).

3

> departure was met. Now, with the mandatory duty to apply the Guidelines
> excised, the duty imposed by section 3553(a) to "consider" numerous
> factors acquires renewed significance.

Crosby, 397 F.3d at 111; see also United States v. Lake, 419 F.3d 111, 114 (2d Cir. 2005) (discussing the difficulty in finding a pre-Booker sentence was harmless error given the 'renewed significance' of other section 3553(a) factors in the post-Booker regime).

However, notwithstanding the termination of mandatory application of the Sentencing Guidelines, the Guidelines are in no way obsolete in the post-Booker era. Sentencing judges are still required to consider a number of factors outlined in section 3553(a). Id. Notably, this includes the following:

> (4) the kinds of sentence and the sentencing range established for-
>     (A) the applicable category of offense committed by the applicable
>     category of defendant as set forth in the guidelines-
>         (I) issued by the Sentencing Commission . . .
> (5) any pertinent policy statement-
>      (A) issued by the Sentencing Commission . . .

18 U.S.C. § 3553(a)(4), (5). In effect, as the Second Circuit explained in Crosby, the sentencing judge is under much the same duty post-Booker as he/she was pre-Booker:

> In order to fulfill this statutory duty to "consider" the Guidelines, a
> sentencing judge will normally have to determine the applicable Guidelines
> range. A judge cannot satisfy this duty by a general reference to the entirety
> of the Guidelines Manual, followed by a decision to impose a
> "non-Guidelines sentence." . . . Moreover, although the [Supreme] Court in
> the Substantive Opinion prohibits a sentencing judge from finding any facts
> that enhanced a Guidelines sentence above the range that is based solely on
> facts found by the jury in its verdict or admitted by the defendant, the Court
> in its Remedy Opinion contemplates that, with the mandatory use of the
> Guidelines excised, the traditional authority of a sentencing judge to find
> all facts relevant to sentencing will encounter no Sixth Amendment
> objection. Thus, the sentencing judge will be entitled to find all of the facts
> that the Guidelines make relevant to the determination of a Guidelines
> sentence and all of the facts relevant to the determination of a
> non-Guidelines sentence.

Crosby, 397 F.3d at 111-12. The Second Circuit, in Crosby, outlined what it deemed "several essential aspects" of Booker concerning sentencing. First is the conclusion that the Guidelines are no longer compulsory. Second, that the sentencing judge remains obligated to consider the Guidelines and all of the section 3553(a) factors. Third, that the sentencing judge will typically need to determine the applicable Guidelines range (or at minimum identify the arguably applicable ranges), and consider appropriate policy statements. Fourth, that once all factors are taken into consideration, the judge will impose either a Guidelines sentence or a non-Guidelines sentence. And finally, that the sentencing judge "is entitled to find all facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence." Id. at 113.

The Second Circuit further emphasized in Crosby that although the Guidelines are now advisory, as opposed to mandatory, sentencing judges must be mindful that the Guidelines are not simply "casual advice, to be consulted or overlooked at the whim of a sentencing judge." Id. Indeed, the opinion states: "it would be a mistake to think that, after *Booker/Fanfan*, district judges may . . . exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum. Id.

Under Booker and Crosby, it is plain that certain criminal defendants are entitled to resentencing in a manner consistent with the Booker decision. The Second Circuit, in Crosby, however, held that the appellate court reviewing a pre-Booker sentence is "not so limited" in its choices as to require automatic resentencing by the district judge. Id. at 117. Instead, the circuit court determined that "a remand for determination of *whether* to resentence is appropriate."[3] Id.

---

[3] The court noted that "since an appellate court has the authority to remand for resentencing, absent harmless error or unpreserved error that does not satisfy plain error analysis,

The court explained:

> Without knowing whether a sentencing judge would have imposed a materially different sentence, under the circumstances existing at the time of the original sentence, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations, an appellate court will normally be unable to assess the significance of any error that might have been made.

Id. Thus, on remand, this court is charged with determining, in full compliance with the new sentencing regime, whether a sentence imposed post-Booker "would have been essentially the same as [the sentence] originally imposed." Id. at 118. The standard put forth in Crosby is one of material difference: a sentence imposed under pre-Booker rules "will satisfy plain error analysis if the sentence imposed under a correct understanding [of Booker] would have been materially different." Id. Therefore, it is my task to determine whether the sentences I previously imposed against Damti and Yosef would be 'non-trivially different' from sentences I would impose now in the post-Booker era. As explained below, I find that there would be no material difference between the previously imposed sentences and a post-Booker sentence, and the defendants request for resentencing is therefore denied. _____

### III. Discussion

#### a. Defendant Avinoam Damti

Defendant Damti, in his moving papers, correctly asserts that 18 U.S.C. § 3553(a), which continues to govern federal criminal sentencing, sets forth the obligation of district judges to

---

we think an appellate court necessarily has the lesser power to remand for a determination of whether to resentence, and to permit resentencing." Crosby, 397 F.3d at 117.

"impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 [of subsection (a)]." 18 U.S.C. § 3553(a). Those four purposes are as follows:

> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Damti argues that these purposes can be served with a lesser sentence. (Damti Memo at 16-17.) Specifically, Damti emphasizes that under the governing statute the court must consider the "history and characteristics of the defendant." (Damti Memo at 8, citing 18 U.S.C. § 3553(a)(1).) On this issue, Damti brings to the court's attention several "personal and unique factors" that should be taken into consideration. (Damti Memo at 11.) These include the fact that all of his family currently resides in Israel, including his father, who is very ill and unable to travel to the United States. (Damti Memo at 8.) He also points out that his three children, all under the age of ten, are suffering from their father's absence, along with his wife, who has been working long hours to support their family. (Id. at 9-10.) Damti also points to his overactive thyroid condition, which he claims has been worsening since his incarceration and may require radiation therapy and medication for the remainder of his life. (Id. at 10.)

Although I am sympathetic to the effects of Mr. Damti's incarceration on his own health and the well-being of his family, in particular his young children, these facts were previously presented to the court through the Presentence Investigation Report and were given full consideration at the time of the initial sentencing. In light of the crimes Damti committed, these

7

personal factors are no more compelling now than they were at the original sentencing. Thus, reconsideration of these facts would not result in a sentence that would be materially different than the sentence previously imposed.

With respect to Booker and the changes implemented by that decision, Damti argues that his Sixth Amendment rights were violated because the five sentencing enhancements imposed were not proven to a jury or found beyond a reasonable doubt. (Id. at 12.) In particular, he claims that resentencing is especially warranted here "because a very significant factor in the sentencing calculation was the estimated amount of the 'loss' – an amount not found by the jury based on proof beyond a reasonable doubt." (Id.) The Defendant's argument, however, fails.

As previously discussed, Booker did not alter the sentencing judge's authority to find all facts relevant to sentencing. See Booker, 125 S.Ct. at 759-61, 769 (discussing the importance of the sentencing judge's ability "to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction") (emphasis in original); see also Crosby, 397 F.3d at 111-12 ("the [Supreme] Court in its [Booker] Remedy Opinion contemplates that, with the mandatory use of the Guidelines excised, the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection.").

At the initial sentencing, this court made findings with respect to all enhancements imposed. See generally October 8, 2003 Hearing Transcript ("Oct. 8 Tr.") Specifically, the court found that the defendants defrauded more than fifty victims, and accordingly imposed a four level enhancement. (Oct. 8 Tr. at 34-35.) Further, the court found that both defendants had violated a prior judicial order, and accordingly imposed a two level enhancement against them. (Id. at 58-9.) Another two level enhancement was imposed for the court's finding of defendants' use of

sophisticated means. (Id. at 77.) The court further found that both defendants exercised a leadership role and a four level enhancement was imposed as a result.[4] (Id. at 79.) Upon review of the transcript of the two-day sentencing hearing and the evidence underlying the facts found by this court to support the defendants' enhancements, the court now determines that those findings are sound and not in violation of Booker or Crosby.

The manner in which victim loss was calculated at the initial sentencing is an issue of particular import to the defendants in this motion for resentencing. At sentencing, this issue was also of high import to the court, evidenced by the fact that sentencing was adjourned to continue for a second day of testimony and arguments solely on the issue of loss calculation. (See Oct. 8 Tr. at 117.) Upon review, the court confirms that the loss calculation was proper and not in violation of Booker. Before the initial sentencing, the court carefully reviewed all documents submitted concerning the loss of victims. (See id. at 59.) At the hearing, I explained in detail my methodology supporting my finding that the Government proved by a preponderance of the evidence individual losses in the amount of $375,405.00, and that these losses were the result of fraudulent activity. (See id. at 59-62.) Further, I properly found by a preponderance of the evidence that the defendants caused at least $100,000.00 of non-pecuniary losses. (Id. at 64.) Indeed, as I explained at the hearing, the court determined that these loss calculations were without question considerably lower than the actual losses incurred by victims of the defendants' fraudulent scheme. (Id. at 62-63.) I find no reason now to reconsider the calculations made then. They were not made in violation of Booker as the sentencing judge "is entitled to find all facts

---

[4] With respect to the Mr. Yosef only, the court found that he had obstructed justice and therefore imposed an additional two level enhancement against him. (Oct. 8 Tr. at 88.)

9

appropriate for determining either a Guidelines sentence or a non-Guidelines sentence." Crosby, 397 F.3d at 113.

Accordingly, as I find that adequate consideration was given to all of the 18 U.S.C. § 3553 factors at the initial sentencing, and there would be no material difference between a new sentence now imposed under the post-Booker rules and the one previously imposed, resentencing of Defendant Damti is unwarranted.

### b. Defendant Ofer Yosef

Yosef joins in his co-Defendant Damti's legal arguments in support of re-sentencing. (Yosef Memo at 1.) As discussed above, the arguments put forth in Damti's moving papers with respect to this court's power post-Booker to conduct fact-finding relevant to sentencing are without merit. Thus my conclusions on that issue apply with equal force to Defendant Yosef.

Additionally, Yosef, like his co-Defendant, appeals to this court for reconsideration of his personal history and characteristics. (Id. at 4.) He submits that "because of the mandatory nature of the Sentencing Guidelines at the time of the sentencing in this case . . . the Court could not give proper weight to such factors as [his] lengthy work history, his distinguished service in the Israeli Army, his willingness to plead guilty at various stages of the proceeding, and most importantly, the devastating impact of the draconian guidelines-mandated sentence on [his] family." (Yosef Response letter dated July 19, 2005). Yosef maintains that, now, in light of Booker, this court is empowered to give "greater consideration to such factors in fashioning a reasonable response." (Id. at 1-2.) Again, I am sympathetic to the plight of the Defendant's family, the fact that he has a wife and young son who were forced to leave the United States as a result of his conviction, and that his ability to establish a meaningful relationship with his child has been impaired by his

incarceration. However, as with Damti, these facts were brought to my attention in the Presentence Investigation Report and were given due consideration by this court at the initial sentencing. Thus, as it is my determination that there would be no material difference between a sentence imposed under post-<u>Booker</u> guidelines and the pre-<u>Booker</u> sentence of 151 months previously handed down, Defendant Yosef's request for resentencing is denied.

Yosef makes the additional request that the $10,000 fine imposed against him be vacated on the grounds that he lacks the ability to pay. (Yosef Memo at 7-8.) Specifically, Yosef asserts that he currently is without a home, personal property, or any money, and that he will be immediately deported upon the completion of his sentence. (<u>Id.</u> at 7.) Yosef also maintains that imposition of the fine and his inability to pay it will render him ineligible for a "treaty transfer" which would enable him to serve out the remainder of his sentence in Israel, where he could be visited by his wife, son and extended family. (<u>Id.</u> at 7-8.) The Government responds that at the initial sentencing the Court specifically found that Yosef would likely be able to find gainful employment upon release and that this would enable him to satisfy the order. (Govt.'s Reply dated July 5, 2005 at 3.) The Government urges that this was an "eminently reasonable" finding and that there are no grounds to revisit the issue. (<u>Id.</u> at 4.) Yosef, in further support of his request to vacate the fine, reminds the court that he will likely be deported as soon as he is released from prison and, without any references to support the contention, asserts that "salaries and the standard of living in Israel are substantially lower than in the United States." (<u>Id.</u> at 2.)

At the initial sentencing of Yosef, it was brought to my attention that the defendant did not have a lot of money and that he is not a United States Citizen and would therefore face deportation at his release from prison. (<u>See</u> Oct. 15 Tr. at 94.) Although the applicable fine range under the

Guidelines for the crimes which Yosef was found guilty of is $17,500.00 to $175,000.00 per count, upon consideration of Mr. Yosef's circumstances, I reconsidered imposing a higher fine against him and instead imposed a $10,000 fine. Id. I determined then that Mr. Yosef should be able to pay this lesser fine, and I have no reason to reconsider that finding now. Accordingly, defendant's motion to vacate this fine is denied.

**IV.    Conclusion**

After fully considering all relevant facts, in accordance with 18 U.S.C. § 3553, Booker and Crosby, this court finds that resentencing of the Defendants is unwarranted in this case because there would be no material difference between a post-Booker sentence and the previously imposed sentence. Therefore, the requests for resentencing by Defendants Avinoam Damti and Ofer Yosef are hereby DENIED. It is further ordered that Defendant Ofer Yosef's request to vacate the $10,000 fine imposed against him is also DENIED.

SO ORDERED.

Dated: October 5, 2005  /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.  Nicholas G. Garaufis
        United States District Judge